MASON *v.* MASON.

Opinion delivered April 28, 1924.

1. MARRIAGE—ANNULMENT FOR FRAUD OR DURESS.—A marriage obtained by fraud or duress is not void, but is voidable at the election of the injured party, when annulment is sought within apt time.

2. MARRIAGE—FALSE REPRESENTATIONS AS TO PREGNANCY.—That plaintiff was induced to marry a woman with whom he had had illicit intercourse by false representations on her part that she was pregnant, is not ground for annulment of the marriage.

3. DIVORCE—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—The chancellor's finding that the wife's criminal prosecution of her husband was directed solely toward forcing the husband to respect his marriage vows, and was not ground for divorce, *held* sustained by the evidence.

Appeal from Johnson Chancery Court; *J. B. Ward,* special chancellor; affirmed.

*Jesse Reynolds,* for appellant.

McCULLOCH, C. J. Appellant and appellee are husband and wife, having intermarried in Johnson County, Arkansas, on October 22, 1921. Each of the parties was about nineteen years of age at the time of their inter-

marriage, and they have never cohabited as husband and wife or lived under the same roof since the ceremony was performed.

The appellee, Hallie Mason, filed her complaint against appellant, Ewell Mason, in the Johnson Chancery Court on October 9, 1922, to recover a monthly allowance of money for her support. It is alleged in the complaint that, immediately after the intermarriage of the parties, and on the same day, appellant "wilfully abandoned and deserted plaintiff, and since has failed and refused to live with the plaintiff," and that appellant was able to support appellee, but has refused to do so. Appellant filed his answer, denying that he had refused to support appellee, and also filed a cross-complaint against appellee for divorce, on the ground that she had been guilty of conduct which was sufficient to render his condition intolerable. He alleged in his cross-complaint that, at the time of the intermarriage, appellant was a schoolboy, attending a college in Clarksville, and that the parties, together with their respective parents, entered into an agreement that appellant should return to school and remain there for the balance of the term, and that appellee should remain with her father and be supported by him until the expiration of the school year. Appellant also alleged that appellee and her father, disregarding this agreement, at once commenced and persisted in efforts to harass and annoy appellant by having him arrested for crime—that, immediately after the marriage, they employed a lawyer and began to institute prosecutions against him. Appellee answered the cross-complaint, denying all of the allegations thereof with respect to any misconduct on the part of appellee or her father.

On December 26, 1922, while the action referred to above was pending, appellant, by his father as next friend, commenced an action in the Johnson Chancery Court against appellee to obtain an annulment of the marriage relation between the parties, on the ground of alleged fraud on the part of appellee and her father in

inducing appellant to marry. It is alleged in this complaint that, prior to the intermarriage, appellant and appellee had been indulging in sexual intercourse with each other, and that appellee and her father falsely represented to appellant that appellee was then pregnant with a child, and that appellant was the father of the child, that said representation was false, and was made for the fraudulent purpose of inducing appellant to marry the girl. Appellant also set forth in his complaint the same statements as in his cross-complaint in the other action, with respect to the alleged agreement between the parties that appellant should return to school and remain there until the end of the school year. The court sustained a demurrer to this complaint, and, appellant declining to plead further, final decree was rendered against him, dismissing the complaint for want of equity.

The other action for alimony, and appellant's cross-complaint for divorce, proceeded to final hearing on oral testimony, and resulted in a decree dismissing appellant's cross-complaint for want of equity, and he has prosecuted an appeal in each of the cases. The two appeals have been consolidated here for the purpose of being briefed together, and will be disposed of in one opinion.

A marriage obtained by fraud or duress is not void, but is voidable at the election of the injured party, when annulment is sought within apt time. Nelson on Divorce and Separation, § 569. There is some conflict in the authorities as to what acts will constitute fraud sufficient to justify the annulment of a marriage contract, but we are unable to find any authority which goes to the extent of holding that the facts set forth in appellant's complaint would justify annulment of a marriage. The only misrepresentation set forth in the complaint is in regard to appellee's condition of pregnancy. It is admitted that appellant had been having sexual intercourse with appellee prior to this time, and there is a further allegation that appellant was represented as being the father of the unborn child; but there is no allegation in the complaint that another person was the father of the child; on the

contrary, the allegation is that the representation as to pregnancy was altogether false.

It has been held that a marriage induced by misrepresentation as to the paternity of a child will afford grounds for annulment, where the parties had been having sexual intercourse before the marriage and the husband was induced to believe, by the false representations, that he was the father of the child. Nelson on Divorce and Separation, §§ 607, 608, 609. But, as before stated, there is no allegation in the complaint before us as to misrepresentations in regard to the paternity of the unborn child, but the allegation is that the representation as to pregnancy was false. We do not think that, where there is nothing more than a false representation as to pregnancy, the parties having been indulging in sexual intercourse with each other, it is sufficient to afford grounds for annulment of the marriage; on the contrary, the rule, supported by authorities, is stated by a textwriter as follows:

"If the parties have had illicit intercourse, the marriage will not be annulled because the woman falsely represents that she is pregnant, and thus induces the man to marry her to prevent disgrace. In such cases the pregnancy is always a doubtful matter, and, if it does not exist, it is still a matter of some uncertainty that a child will be born. The husband, having placed himself in such a position that he cannot tell whether the woman is or not pregnant, and is thus in her power, is still free to pursue his own course. He may dishonor the woman by refusing to marry her, and, if a child is born, be liable to bastardy proceedings. Or he may choose to marry her from such excellent motives as to recompense the seduction, as far as possible, to shield her honor as well as his own, and to assume in advance liabilities which he believes are inevitable. When he marries under such circumstances, he voluntarily assumes a known risk that the pregnancy exists. He takes the woman for better or worse, and should not be released because no pregnancy existed and the unfortunate affair has resulted better

than he has calculated. This is not a case of unmixed fraud, because the man relies not alone on her representations, but in part upon the knowledge of his guilty conduct. He does not assume unknown liabilities and conditions, as is the case where a man marries a woman whom he believes is chaste, when in fact she is concealing the fact that she is pregnant by another. Nelson on Divorce and Separation, § 610.

The court was therefore correct in sustaining the demurrer to appellant's complaint.

It appears from the testimony in the other cases that the parties to the action were residing with their respective parents on farms about half a mile distant from each other, and about twelve miles distant from Clarksville. Appellant at that time was attending school at Clarksville, and boarded there. For about a year prior to the marriage the parties had been going together, and they began to have sexual intercourse several months before the marriage. On Friday, October 21, 1921, appellant was informed by his father that the girl claimed to be pregnant as result of their sexual intercourse, and suggested that the parties intermarry at once. Appellant, accompanied by his father, went to appellee's home that night, and, on consultation, it was agreed that appellant and appellee should intermarry at once, that appellant should return to school and remain there until the end of the school year, and that appellee should remain with her father. On the next day, Saturday, October 22, 1921, appellant obtained a marriage license, and took appellee to a minister of the Gospel in the neighborhood, and the marriage ceremony was performed. Appellant and appellee then returned to her father's house, and appellant, after remaining there fifteen or twenty minutes, left, and never returned. He went back to school, and every few weeks went back to his father's home in the country, and remained there two or three days at a time, one time for a week, and never went to see appellee, nor spoke to her.

Appellee testified that she became pregnant in September, 1921, as the result of her intercourse with appellant, and that, when she informed him of it, he procured medicine to produce an abortion, that she took the medicine, which brought about an abortion, which occurred two days after their intermarriage.

When the grand jury convened in December, 1921, appellee was summoned to appear as a witness for the purpose of finding an indictment against appellant, but no indictment was returned. Shortly thereafter appellee's father obtained a warrant from a justice of the peace for appellant's arrest on the charge of having committed an abortion, and appellant was bound over to the grand jury, but, at the next term of the court, the grand jury failed to indict for that offense, but indicted appellant for wife desertion. He was tried on that charge, but the jury was discharged without an agreement.

Appellant contends that appellee or her father employed a lawyer the day after the marriage and began to harass him with threats of prosecution, and did have him arrested and indicted. This is the only ground upon which he seeks a divorce. He testified that, on Monday after the marriage on Saturday, appellee came to town with her father and met appellant on the street, and threatened to prosecute him. Appellee and her father explained this by showing that information had been conveyed to them on Sunday, the day after the marriage, that appellant was hiding out or leaving the country for the purpose of deserting appellee, and that they came to town to consult the sheriff and a lawyer about apprehending appellant and preventing his flight. The father testified that his sole effort was to require appellant to respect his marriage vows by living with appellee. He testified that there was an agreement that appellant was to return to school, but that he was to respect the marriage relation and live with his wife so far as consistent with his school attendance, and that this was violated by appellant refusing to have anything to do with her, or even to visit her or speak to her.

It is shown, on behalf of appellee, that the sole effort was directed towards forcing appellant to respect his marriage vows and live with appellee, and that he was not arrested until after he had refused to live with her. According to the contention of appellee, she was not guilty of any misconduct, and the fault was entirely with appellant.

The finding of the chancellor in favor of appellee upon the issues is not against the preponderance of the evidence, and the decree denying the divorce is affirmed; likewise the decree refusing to annul the marriage.